THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN F. VOELKEL et al., as Surviving Executors of EMIL BOMMER, Deceased, Relators, against ROLLIN BROWNE et al., Constituting the State Tax Commission, Respondents.

Third Department, December 29, 1944.

*Carl S. Heidenreich,* attorney *(Charles A. Kussmaul* of counsel), for relators.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, First Assistant Attorney-General, John C. Crary, Jr., Assistant Attorney-General,* of counsel), for respondents.

FOSTER, J. This is a proceeding pursuant to article 78 of the Civil Practice Act, to review a determination of the State

Tax Commission assessing taxes against relators under article 16-A of the Tax Law, for the period from May 17, 1935, to December 31, 1935, and for the calendar year 1936. The taxes so assessed were paid under protest.

Relators are surviving executors of Emil Bommer, who died May 16, 1935, a resident of Kings County, and whose will was admitted to probate May 22, 1935. Decedent left an estate consisting of cash, securities, eighty-one separate pieces of real estate, and a manufacturing business which made door spring hinges and other door-closing devices. By his will he conferred upon his executors the power to sell his real estate, and authorized them to carry on the manufacturing business for a period not to exceed seven years or beyond the lives of his wife and daughter. After the will was probated the executors held, managed and leased all of the real property in the estate, and also operated the spring hinge business until the time when both the real estate and the business were transferred as the result of a compromise agreement between the parties interested in the distribution of the estate. The controversy between relators and the Tax Commission centers primarily over whether depreciation on the real property, excluding property used for factory purposes, should be allowed in computing unincorporated business taxes against the manufacturing business. Secondarily there is the question of whether the holding, managing and leasing of the real property by relators, as surviving executors, was an unincorporated business within the meaning of the statute.

Section 386 of article 16-A of the Tax Law (as originally enacted by L. 1935, ch. 33 and amd. by L. 1935, chs. 367 and 745), provided in part: " For the purposes of this article, * * * the words ' unincorporated business ' mean any trade, business or occupation conducted or engaged in by an individual, statutory or common law trust, estate, partnership or limited or special partnership, society, association, executor, administrator, receiver, trustee, liquidator, referee, assignee, or by any other entity or fiduciary, * * * and include any trade or business which if conducted or engaged in by a corporation would be taxable under any of said articles; * * *. It is not intended that an individual shall be deemed engaged in an unincorporated business with respect to compensation for services rendered by him as an employee, or as an officer of a corporation, society or association, or of a state, municipality or other political subdivision of a state, or. as an executor, administrator, receiver, trustee, liquidator, referee, assignee or other fiduciary, unless such compensation constitutes

receipts of a business regularly carried on by such individual ''.

By chapter 411 of the Laws of 1938, made retroactive to January 1, 1936, the foregoing section was amended in part as follows: '' It is not intended that an owner, lessee or fiduciary shall be deemed engaged in an unincorporated business solely by reason of the holding, leasing or managing of real property or * * * ''.

Relators claim first, that in their administration of all the assets of the estate they were carrying on an unincorporated business within the meaning of the statute. Of course if this contention is correct then it follows as a matter of simple logic that depreciation allowances on the real estate were proper deductions as a business loss in computing a tax. The Commission has found otherwise and we think the facts and the law sustain its decision.

There is no proof that decedent integrated or connected his real estate holdings with his manufacturing business during his lifetime. Indeed the proof is quite to the contrary. The records of the business and the real estate were kept separately. Separate bank accounts were maintained. Decedent made a rental charge, as the owner of certain buildings used for factory purposes, to the Spring Hinge Company, of which he was the sole proprietor, as a tenant. This situation was not changed when relators took over the management of decedent's estate. They held and continued to manage the real estate in substantially the same manner as the decedent had done; and also carried on the manufacturing business, as they were empowered to do under his will. There is no basis for a distinction between the nature of these activities before and after his death.

The secondary question of whether the ownership and management of the realty constituted a business, either before or after decedent's death, within the meaning of article 16-A of the Tax Law, poses a different problem. Conceivably one who is engaged in buying and selling real property for trading purposes might well be considered as engaged in a business within the meaning of the statute. The same may be said of stocks and bonds. But it can hardly be said that one is so engaged in business who holds stocks and bonds merely as an investment for income purposes. While the analogy may not be perfect the same principle should apply to real estate. Business implies something more than merely the ownership and management of real property for income purposes. (*People ex rel. Nauss* v. *Graves,* 283 N. Y. 383.) Each case of course must be decided in the light of its own circumstances. Relators point

to the size of decedent's real estate holdings, and the amount of income derived therefrom, as proof that the management of such property was really a business. The amount involved is not a test, unless arbitrarily made so by statute. Otherwise any sizeable investment for income purposes would constitute a business within the meaning of the Act. It does not appear from the record here that for the period embraced within the 1935 return relators did aught but manage the realty as an income-producing investment. They were therefore not engaged, insofar as such property was concerned, in a business under the statute. By the same reasoning, and under the specific terms of the amendment effective for 1936, they were not engaged in a business for that year.

The determination of the State Tax Commission should be confirmed, with fifty dollars costs.

BREWSTER, J. (dissenting). The testamentary authority was broad enough to have enabled the executors, if they chose to do it, to integrate a continuation of the door hinge manufacturing business with the questioned real estate activity, as business activities, although they were composed of wholly different natures. Decedent said " prosecute and carry on said business [door hinge manufacturing] *with my estate and property* ", and employees of the manufacturing business were *continued* in employment in the active management and operation of the real estate. I think, therefore, the executors had power, at least for the periods in question, to continue operations in that way. If so, then as regards the real estate were they, as fiduciaries, concerned therewith *solely* by reason of holding, leasing and managing it? The method and manner of their operation of the realty properties, their authority under the will, and the value, diversity and number of said properties, incline me to characterize the nature of their undertakings as a business activity conducted in conjunction with the other which was, of course, far different in nature. But one can be in two or more businesses of far different kinds, yet when individually owned, all the kinds may, for the purpose of the tax, be considered one business.

In *People ex rel. Nauss* v. *Graves* (283 N. Y. 383, 386–387) we are told that the nature of the situation " does not permit an exact formula." But it is pointed out that " there has been evolved the principle which distinguishes between a passive and an active owner or investor." The latter is described as " one who himself actively participates in administering the management of the properties." In view of the principle thus evolved

it seems to me that the relators have fairly established that, since the executors themselves, under the authority aforesaid, wholly carried on the administration and management of the real estate properties, and thus *actively participated* therein in an endeavor to accumulate net earnings, which in turn would be commingled in their respective hands with earnings from the manufacturing business — their whole·activity, including both fields of effort, constituted a business or occupation within a fair interpretation of the provisions of article 16-A of the Tax Law. The case above cited marks out a rather decided difference between the situation there presented and the one here shown. There, those sought to be taxed were passive owners in their own right — tenants in common by inheritance, who allocated " the active administration of the properties to others and [performed themselves] only such acts as are appropriate to safeguard [their] ownership." In our case the relators may well be said to belong in the other category, of active owners participating in actually administering and managing the properties.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur with FOSTER, J.; BREWSTER, J., dissents in an opinion.

Determination of the State Tax Commission confirmed, with fifty dollars costs.