128 N.J. Super. 535 (1974)
320 A.2d 867
NEWARK BUILDING ASSOCIATES, APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1973.
Decided May 28, 1974.
*536 Before Judges HANDLER, MEANOR and KOLE.
Mr. Martin B. Cowan, of the New York Bar, argued the cause for appellant (Mr. Jacob Slavitt, attorney).
Mr. Herbert K. Glickman, Deputy Attorney General argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KOLE, J.S.C., Temporarily Assigned.
*537 The Division of Tax Appeals entered a judgment imposing liability on appellant to pay taxes under the New Jersey Unincorporated Business Tax Act, N.J.S.A. 54:11B-1 et seq. (sometimes hereafter referred to as "the act"), for its taxable years ending August 31, 1967 and 1968, respectively. The Division held that appellant was taxable as a "business" as that term is used in the act. This appeal followed.
Appellant was organized on August 1, 1952 by agreement as a New Jersey partnership for the purpose of acquiring and holding title to a 33-story office building, the National Newark Building at 744 Broad Street, Newark, New Jersey. At is inception appellant consisted of 20 individuals, each of whom contributed $110,000 to the partnership capital. Under the agreement, any two partners may execute a lease of the property; partnership interests may be sold and transferred; and the partnership is to continue on the death of any partner.
On September 2, 1952 appellant entered into an agreement with another New Jersey partnership, 744 Broad Street Realty Associates (Broad Street), leasing the entire National Newark Building to Broad Street for a term of 25 years, with an option to renew for another 25 years, at an annual rent of $736,000 payable in equal monthly installments of $61,333.64. On October 1, 1962 appellant purchased an adjacent parcel of land used as an open-air parking lot, and simultaneously leased it to Broad Street at an annual rental of $11,500 for a period coterminous with the lease of the National Newark Building. Both leases will be referred to hereafter as "the lease." The lease permits the lessee to terminate the tenancy at any time on 60 days' notice.
The lease is a "net lease." Appellant receives the rental free from all taxes, charges or expenses of any kind. Broad Street, the lessee, is required to operate and manage the property, collect all rents, pay all taxes, charges, operating and maintenance expenses, insurance premiums, and costs *538 of repairs, improvements and replacements. Broad Street is permitted to assign the lease and sublet. Accordingly, at no time has appellant ever operated or managed either the building or the parking lot or rendered any services to any tenant or subtenant. Broad Street has taken possession and has sublet the premises to various tenants. Appellant's activities have consisted solely of maintaining its existence as a partnership and filing such documents as are required of it by law, accepting the net rent and depositing it in its bank account, making the required payments to the mortgagee, and distributing to the partners the net proceeds. It has no employees. Its required accounting, legal and other partnership supervisory acts are performed by its attorneys at a stated fee of $12,000 a year, plus, apparently, disbursements for accounting fees. At the time of the instant controversy appellant's partners had increased from 20 to 54. At August 31, 1968 the partnership assets were about $5,500,000 and the partners' capital account was about $1,000,000. For the tax year ended August 31, 1968, it had gross income of $659,888.99, net income of $153,338.36 and an expenditure of $15,499.93 for "legal and accounting fees."
The Unincorporated Business Tax Act was enacted in 1966 and imposes
* * * Upon every individual or other unincorporated entity engaged in an unincorporated business an annual excise tax, measured by the gross receipts of such unincorporated business, and allocated to the State as hereinafter provided at the rate of 1/4 of 1%; * * *. [N.J.S.A. 54:11B-3]
N.J.S.A. 54:11B-2(e) reads in part:
"Unincorporated business" shall mean and include any trade, business, profession or occupation conducted or practiced for profit in whole or in part within this State by any individual or other unincorporated entity not subject to the Corporation Business Tax Act (1945) (P.L. 1945, c. 162) or the Financial Business Tax Law (1946) (P.L. 1946, c. 174), except that:
i. * * *
*539 ii. An individual or other unincorporated entity, except a dealer holding property primarily for sale to customers in the ordinary course of his or its trade or business, shall not be deemed engaged in an unincorporated business solely by reason of the purchase, sale or exchange of property for his or its own account, but this subparagraph shall not apply if the unincorporated entity is taxable as a corporation for Federal Income Tax purposes.[1]
The sole issue on this appeal is whether the Legislature intended the kind of real property activities engaged in by appellant to render it an "unincorporated business" as that term is used in N.J.S.A. 54:11B-1 et seq. It is taxable under that act only if it is a business.
The Division of Tax Appeals found appellant's operation was an "unincorporated business" and thus subject to the tax. In so deciding the judge appeared to place weight on two factors: (1) the replacement tax program, L. 1966, cc. 133 to 138, of which the Unincorporated Business Tax Act is a part, was intended by the Legislature to impose a business tax on all sectors of the business community (see Foosaner v. Director, Div. of Taxation, 58 N.J. 57 (1971)); (2) N.J.S.A. 42:1-6(1) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit" (emphasis supplied). We find neither rationale persuasive.
The mere fact that the Legislature may have intended the entire business community of the State to share in some way in the payment of business taxes does not aid in the determination of whether, in the first instance, it contemplated that a particular activity be considered a "business" under the act. There can be no doubt that some activities conducted for profit were not intended to be subject to this tax. If this were not so, N.J.S.A. 54:11B-2(e) would have defined "unincorporated business" as meaning and including *540 "any [activity] conducted or practiced for profit * * *," rather than as a "trade, business, profession or occupation" so conducted. The reliance on the legislative definition of partnership found in the Partnership Act, N.J.S.A. 42:1-1 et seq., as a "business for profit" was misplaced. The tax statute applies to a business, irrespective of whether it is operated in an individual or partnership capacity. Additionally, N.J.S.A. 54:11B-1 et seq. and the Partnership Act, N.J.S.A. 42:1-1 et seq., are not in pari materia, nor are they statutes on cognate subjects. See State v. Brown, 22 N.J. 405, 415 (1956); Aviation Services v. Hanover Tp. Bd. of Adjustment, 20 N.J. 275, 285 (1956). Further, a corporation is organized for the purpose of doing business, and, as hereinafter discussed, corporations have been held under certain circumstances not to be engaged in business. And subparagraph (ii) of N.J.S.A. 54:11B-2(e) specifically provides that, except for a dealer, an individual or other unincorporated entity "shall not be deemed engaged in an unincorporated business solely by reason of the purchase, sale or exchange of property for his or its own account" (emphasis added).
Appellant conceives of itself merely as a passive investor rather than a business. On the limited record before us, we conclude that it is correct and thus is not subject to the tax.
Prior to the enactment in 1966 of the Unincorporated Business Tax Act there existed a judicially well-established principle in tax law that distinguished between the ownership of property and the passive receipt of income therefrom, on the one hand, and activities connected with such ownership that constituted a business. Generally, it was held that one who actively participates, directly or indirectly  e.g., through an agent  in the management of property he owns is in business, while one who allocates such management to others and himself performs only such acts as are appropriate to safeguard his ownership, including distribution of income received from the property, is not. The latter is considered an investor who passively receives income. The determination *541 of the issue, of course, depends upon the facts of the particular case. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 516, 37 S.Ct. 201, 61 L.Ed. 460 (1917); Whipple v. Commissioner, 373 U.S. 193, 197, 83 S.Ct. 1168, 1171, 10 L.Ed.2d 288 (1963); Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428 (1911). Flint, supra, early defined "business" as that "`which occupies the time, attention and labor of men for the purpose of a livelihood or profit,'" 220 U.S. at 171, 31 S.Ct. at 357. The emphasis is on an active role in the production of profit. See concurring and dissenting opinion in District of Columbia v. Brady, 109 U.S. App. D.C. 324, 288 F.2d 108, 120 (D.C. Cir.1970).
Thus, the federal capital stock tax[2] imposed a tax on corporations engaged in business. A line of cases decided thereunder holds that the enjoyment of the passive benefits of ownership of real property does not constitute "doing business" for tax purposes. In the cases that found the corporation not engaged in business and thus not subject to the capital stock tax, the taxpayer did not operate or manage the leased premises. Rather, the situations involved either net leases or circumstances akin thereto. See, e.g., United States v. Emery, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915); McCoach v. Minehill Ry., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842 (1913); Zonne v. Minneapolis Syndicate, supra; Kingkade Hotel Co. v. Jones, 30 F. Supp. 508 (W.D. Okl. 1939), app. dism., 108 F.2d 1015 (10 Cir.1939).
The State argues that the persuasiveness of the above cases is tempered by subsequent Federal court rulings involving the same statute. We disagree.
In Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678 (1926), plaintiff corporation was organized *542 for the purpose of supplying funds to a second corporation which owned mines but needed money to operate them. Plaintiff held the capital stock of the other corporation, issued bonds secured by the pledge of the stock, and furnished the proceeds from time to time to that corporation. Thus, plaintiff owned and voted the stock of the mining corporation and elected its directors. It is true, as the State points out, that the court, in finding plaintiff liable for the tax, placed reliance on the fact that it was realizing profit from the sole activity that it was organized to pursue. 270 U.S. at 455, 46 S.Ct. at 346. However, we also note the observations of the court that plaintiff was more than a mere conduit of funds. It was actually the brain of the other corporation and not only owned but governed it. 270 U.S. at 456, 46 S.Ct. at 346. Thus, an important factor leading to the result in Chile Copper was the control over mining operations, albeit indirect, exercised by plaintiff. In contrast, in the net lease situation presently before us Broad Street's operation of the business of renting space in the office building appears to be independent of any control on appellant's part.
Other cases decided under the federal capital stock tax statute and referred to by the State for the proposition that the mere ownership of property and collection of the fruits thereof constitute "doing business" are similarly distinguishable. For example, in Lamar Hotel Corp. v. Fly, 134 F.2d 225 (5 Cir.1943), the taxpayer was organized expressly for the purpose of taking over a hotel business, acquired the hotel, and was held to be "doing business" under the statute despite the fact that it had employed another corporation to manage the hotel. However, this was clearly not a net lease situation. The taxpayer had entered into a management contract with the second corporation and the latter served as its agent in operating the business. The facts showed that the taxpayer actively participated through that corporation in the conduct of the hotel business. For similar *543 reasons we reject the State's reliance on Harmar Coal Co. v. Heiner, 34 F.2d 725 (3 Cir.1929).
There are also cases interpreting various sections of the Internal Revenue Code that recognize the distinction between investment and business and tend to support the view that appellant's activity is properly characterized as an investment. I.R.C. (1954) § 1221(2) denies to real property used in a taxpayer's trade or business the status of "capital asset." Compare Union National Bank of Troy v. United States, 195 F. Supp. 382 (N.D.N.Y. 1961), involving a true net lease, with Fackler v. Commissioner, 133 F.2d 509 (6 Cir.1943). In finding that the property was used in a trade or business and not a capital asset, Fackler stressed that the taxpayer, through agents, was actively engaged in the business of managing and renting property:
It is a fair inference from the evidence that petitioner acquired the leasehold with the primary intention of operating the building upon it for profit and that he was not holding the property merely as an investment and solely for the purpose of collecting rents without rendering personal service to tenants. * * * The management of the property necessarily involved alterations and repairs commensurate with the number of tenants who occupied the building. It was also necessary to furnish elevator service, heat, light and water which required regular and continuous activity and the employment of labor, the buying of material and many other things which come within the definition of business. [133 F.2d at 511-512]
See Cleveland Trust Co. v. Commissioner, 115 F.2d 481 (6 Cir. 1940), cert. den. 312 U.S. 704, 61 S.Ct. 809, 85 L.Ed. 1137 (1941), where the court said that the "mere receipt of income from leased property and its distribution * * * amounts to no more than receiving the ordinary fruits that arise from the ownership of property and does not constitute doing business." 115 F.2d at 483. See also, Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); Pinchot v. Commissioner, 113 F.2d 718 (2 Cir.1940).
*544 The District of Columbia has a tax on incorporated business under a statute that is similar to that under review.[3] Cases decided thereunder support the view that a property owner receiving rents pursuant to a net lease is not carrying on a business unless he participates himself or through agents in the management of the property:
Of course neither the ownership per se nor even the leasing of owned property necessarily constitutes the carrying on of the business of renting real property. The focal point in the inquiry is whether [the taxpayer] operated the leased properties. Operation of [the] property is a business. [District of Columbia v. Brady, 109 U.S. App. D.C. 324, 288 F.2d 108, 117 (D.C. Cir.1960)]
In the latter case the court determined that the evidence was inconclusive as to whether the taxpayer's real estate agents "(a) effectively insulated him from the active participation in the management or (b) were simply his agents in the operation," and remanded the matter for findings on this issue (at 117). See also, District of Columbia v. Pickford, 86 U.S. App. D.C. 17, 179 F.2d 271 (D.C. Cir.1949).
An unincorporated business tax statute of New York containing a definition of "unincorporated business"[4] comparable to our act has been given a like interpretive gloss by the New York Court of Appeals. In People ex rel. Nauss v. *545 Graves, 283 N.Y. 383, 28 N.E.2d 881 (Ct. App. 1940), appellants were owners in common of investment real property acquired by inheritance. Referring to many of the federal cases we have cited, the court said that when "used in tax statutes * * * `business' or `doing business' connotes something more than the ownership of property and the receipt of income derived from property," and alluded to "the principle which distinguishes between a passive and an active owner or investor." The court found that management had been delegated to rental agents, with appellants making disbursements, executing leases negotiated by the agent, passing on major alterations and consulting weekly with the agent. These activities, it held, did not constitute the conduct of a business, and thus appellants were not taxable. Cf. People ex rel. Voelkel v. Browne, 268 App. Div. 596, 52 N.Y.S.2d 822 (App. Div. 1944), aff'd o.b. 294 N.Y. 834, 62 N.E.2d 390 (Ct. App. 1945).
Our Legislature, in the Corporation Business Tax Act of 1945, has recognized the distinction in a revenue law between a business and merely owning property. That act enlarged the prior franchise tax law coverage by imposing a corporate business tax not only on a corporation "for the privilege of exercising its franchise in this State or for the privilege of doing business or maintaining an office in this State," N.J.S.A. 54:32A-8, but also for "employing or owning capital or property" in this State. N.J.S.A. 54:10A-2 (emphasis added). See Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483 et seq. (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968).
Both appellant and the State seek support for their respective positions in In re Maneely, 21 N.J. Misc. 229, 32 A.2d 852 (Bd. Tax App., 1943), aff'd o.b. 22 N.J. Misc. 170, 37 A.2d 196 (Sup. Ct. 1944). That case held that a foreign corporation that had ceased conducting its pipe business in this State but retained ownership of real property here, leased it to others and managed and kept it in repair, was "doing business" or exercising its franchise for franchise *546 tax purposes. Part of the property had been so leased even while it operated the pipe business, and it continued to receive substantial gross rent from that property, as well as other property, even after abandoning its pipe enterprise. The State relies on the size of the rentals as having induced the result. We are not persuaded that this was an important factor in the case. Appellant correctly contends that the determination was based in part on the privilege of exercising the corporate franchise here and that the case also involved rental from owner-managed real estate which it concedes constitutes doing business. We thus consider Maneely significant only to the extent that it supports the view that management of investment real property is a business.
The threshold inquiry is whether the Legislature intended that, at least with respect to real property gross receipts, the Director and, on review, the courts, be faced with the task of resolving, on a case to case basis, when the taxpayer is or is not a business. The judicial precedents we have examined that apply the general principle do not lead to readily predictable results.
In our view the New York Court of Appeals in Graves, supra, went quite far in categorizing as a passive investment under its unincorporated business tax statute a situation where the owner executed leases negotiated by its agent, consulted weekly with it and passed on major alterations. Nevertheless, subsequently in an opinion affirmed by the Court of Appeals, the New York Appellate Division went further and held that executors who owned, managed and leased the decedent's real property were not engaged in a business under the same act. People ex rel. Voelkel v. Browne, supra. The Appellate Division dissenting judge noted that the court was departing from the principle of Graves. The hazy line between business and passive investment under an unincorporated business tax statute is also illustrated by that part of the decision in District of Columbia v. Brady, supra, dealing with whether the taxpayer-physician was also engaged *547 in the business of lending money. The court divided 5 to 4 on the question. The four dissenting judges in a persuasive opinion held that he was in that business, using as the "underlying guides * * * whether the person does or does not hold himself out to others for the supply of goods or services and whether the activities are or are not extensive, continuous and regular * * * [T]his taxpayer was not simply investing money which he had but rather was receiving requests for loans and then supplying the funds. [This accords with] * * * [t]he `well settled' definition of business as that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." 288 F.2d at 120.
We have reviewed the sparse legislative history of the New Jersey act, both before and after its adoption in 1966. Although there is data which may support the view that its interpretation should not be complicated by hypertechnical distinctions, we find it to be too inconclusive to justify a determination that the historical dichotomy between business and passive investment should be by-passed, at least as to real property.
Thus, in discussing the replacement tax program of which the act was to be a part (see Foosaner, supra, 58 N.J. at 60), the 1965 report of the Governor's Committee on Local Property Taxation stated that any "realistic tax program must be capable of ready administration with a minimum of cost and confusion for taxpayer and tax administrator alike." But we also note the Committee's comment that the unincorporated business tax is only one part of the program and "does not represent a major revenue source" thereunder. Again, although it further concluded that a net income approach under the proposed act would be "entirely too cumbersome considering the low rates and yields involved," the concern is limited to whether a net or gross income tax should be imposed. Moreover, the Committee had considered revenue statutes in neighboring states, including New York, before making its proposals. When the report was made *548 and the act was adopted, New York's unincorporated business tax statute expressly provided that an "owner of real property, a lessee or a fiduciary shall not be deemed engaged in an unincorporated business solely by reason of holding, leasing or managing real property." Unincorporated Business Income Tax, Art. 23 (L. 1960, c. 564), New York Tax Law, § 703(e) (McKinney's Consol. Laws, c. 60, 1966). Indeed, when Graves and Browne were decided in 1940 and 1944, respectively, the then New York statute (see fn. 4, supra) already had been amended for the years after 1935, the tax year dealt with in these cases, to provide for this exclusion from the tax. Nevertheless, the New Jersey act substantially adopted the judicially construed language of the New York statute without the express exclusion.[5]
In testimony before the Joint Taxation Committees of the Senate and Assembly on March 27, 1968, a representative of the State Association of Real Estate Boards complained of the tax authority's considering a lessor under a net lease, as well as any owner receiving rents, as an unincorporated business. She also pointed to the "morass" of administrative interpretation required by the act. Joint Committee on Taxation, Public Hearing of March 27, 1968, at 74-77. In view of what we have said, we do not consider the subsequent inaction by the Legislature as acquiescence in the Director's construction of the statute with respect to the kind of net lease here involved. See Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521 (1964); Eagle Truck Transport, Inc. v. Board of Review, etc., 29 N.J. 280, 291 (1959); Mechanics Finance Co. v. Austin, 8 N.J. 577, 584 (1952); Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc., 15 N.J. 418, 427 (1954), pet. for reh. den. 16 N.J. 47 (1954). Cf. Automatic *549 Merchandising Council of New Jersey v. Glaser, Director, Division of Taxation, 127 N.J. Super. 413 (App. Div. 1974).[6]
On balance, we conclude that the search for legislative intent must be limited to the statutory language alone. So viewed, the term "business" carries with it the judicial definition, already discussed, given it in other tax statutes, including other unincorporated business tax legislation. See Lullo v. Intern. Ass'n of Fire Fighters, 55 N.J. 409, 424 (1970); In re Lichtenstein, 52 N.J. 553, 587 (1968); Todd Shipyards Corp. v. Weehawken, 45 N.J. 336, 343 (1965). If the Legislature desires to include all real property income as a business, it should so provide plainly and unequivocally. Meanwhile, however, there is no requirement that, in interpreting the New Jersey act, the Director slavishly follow the results reached in other jurisdictions even on similar fact patterns. See Higgins v. Commissioner, supra, 312 U.S. at 217, 61 S.Ct. 475; District of Columbia v. Brady, supra 288 F.2d at 114. With respect to real property, absent more concrete legislative direction, he has the authority, under N.J.S.A. 54:11B-20(a), to give such reasonable construction of the act as is appropriate to carry out its goal, as long as a sensible distinction is maintained between a business and a passive investment. See State v. Hatch, 64 N.J. 179, 186 (1973).
Turning to the evidence presented before the Division, we conclude that the limited activities of the appellant under this net lease, heretofore discussed, do not constitute a business under the act.
We do not agree with the State that the size of appellant's assets, income or expenditures is of significance in determining *550 whether it is a business under the act. Had the Legislature intended any of these factors as a determinant of whether one were a business subject to the tax, it would have so provided. Instead, it merely limited taxability to businesses whose gross receipts were over $5,000 a year. N.J.S.A. 54:11B-3. See Higgins v. Commissioner, supra 312 U.S. at 218, 61 S.Ct. 475; District of Columbia v. Brady, supra 288 F.2d at 114.
We also conclude that the State's reliance on N.J.S.A. 54:11B-4(e) is misplaced. That section deals solely with the allocation formula to be used in determining taxable gross receipts of taxpayers maintaining a place of "business" outside the State. It provides that for that purpose gross receipts will include "rentals from property situated * * * within the State." It does not aid the resolution of the issue before us. The taxpayer, in order to fall within this provision, must still be a business under the act rather than one who passively receives income. Cf. Household Finance Corp. v. Director, Div. of Taxation, 36 N.J. 353, 360 (1962), app. dism. 371 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 49 (1962). We note that this provision is the same as that used in the allocation formula for corporate taxpayers maintaining a regular place of business outside of the State contained in N.J.S.A. 54:10A-6(B)(5), a part of the earlier enacted Corporation Business Tax Act. It will be recalled that the latter specifically imposes a tax where the taxpayer corporation owns property in the State. N.J.S.A. 54:10A-2.
The State contends that (1) the lease provision permitting the lessee to terminate it on 60 days' notice and (2) the purchase and lease, ten years after the initial lease, of the parcel adjoining the building for parking purposes, in some fashion make appellant a business. Not so. The termination clause, although on the surface unusual, does not convert the lessee into a managing agent; and the purchase of an adjoining lot for parking under the same net lease arrangement as the building in no way modifies appellant's investor status.
*551 However, these factors may take on some significance in a different factual context. Appellant admits that it and Broad Street have some common ownership. In addition, we note that Harry B. Helmsley, a partner in taxpayer, signed the lease on behalf of the lessee. We need not decide whether this fact alone or with other evidence might establish a degree of participation by partners of appellant in the lessee's operations sufficient to warrant a finding that appellant is more than a recipient of passive income and is indeed a business. The State did not pursue this issue, and on the record below we are unable to determine it. Our conclusion in this case does not preclude its factual development for taxable years after 1968. Cf. Kingkade, supra, 30 F. Supp. 508.[7]
The judgment of the Division of Tax Appeals is reversed. Since appellant has paid taxes for the tax years in question, it is entitled to a refund.
NOTES
[1] We do not determine whether this somewhat unclear exemption from the act is involved in the issue before us. We do not read it as exempting all receipts from real property merely because the latter involves a "purchase" for the taxpayer's account.
[2] § 37 of the Corporation Excise Tax of 1909 (Act of Aug. 5, 1909, 36 Stat. 112).
[3] § 47-1574 D.C. Code 1951. That statute provided that "unincorporated business" means "any trade or business conducted or engaged in by any individual, * * * trust, estate, partnership, or * * * any other entity or fiduciary, other than [a] * * * corporation * * *."
[4] Article 16-A of the New York Tax Law, McKinney's Consol. Law, c. 60, § 386, provided that "the words `unincorporated business' mean any trade, business or occupation conducted" or engaged in by an individual or an entity other than a corporation. Section 350, subdivision 11, provided that the "word `partnership' includes a syndicate * * * or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on * * *."
[5] See Foosaner, supra, 58 N.J. at 61-62, where the court compared the exemption in the New York statute of professions as a business with the plain inclusion thereof in the New Jersey act.
[6] Appellant does not, and in our view cannot meritoriously, challenge the Director's ruling that rentals under a gross lease are deemed business income which must be included in gross income. N.J.A.C. 18:11-2.3(c). It only questions the legality of the part of the regulation that considers rentals under a net lease as gross income under the act.
[7] Appellant has raised the spectre of double taxation should it be held to be subject to the act. We need not deal with the question in view of our determination. See, however, U.S. Steel Corp. v. Director, Div. of Taxation, 38 N.J. 533, 548 (1962), involving the Corporation Business Tax Act, which indicates that that kind of problem, if it exists, may be met appropriately by legislative action.