The Clerk of the Tax Court will enter a judgment dismissing the complaint.

DONALD W. SWIFT, ET UX, ET AL., PLAINTIFFS, v. TAXATION DIVISION DIRECTOR, DEFENDANT.

Tax Court of New Jersey

February 9, 1982.

*Michael A. Guariglia* and *Peter C. Aslanides* for plaintiffs (*McCarter* and *English,* attorneys).

*Mary R. Hamill* for defendant (*James R. Zazzali,* Attorney General of New Jersey, attorney).

LASSER, P. J. T. C.

Taxpayers contest the denial of their claim for refund by the Director of the Division of Taxation, and the assessment of tax on their 1975 gain from the sale of two apartment house properties under the Capital Gains and Other Unearned Income Tax Act, *N.J.S.A.* 54:8B–1 *et seq.*[1] Taxpayers are partners in a partnership which owned and operated two apartment houses

---

[1]Repealed in 1976, pursuant to *N.J.S.A.* 54A:9–24, with the enactment of the New Jersey Gross Income Tax Act.

which were sold in 1975. They contend that their gain on the sale is not taxable under the statute.

The issues in this case are: (1) whether the partnership's ownership and operation of the apartment houses constituted a trade or business, (2) if the partnership is engaged in a trade or business, is each of the partners deemed to be engaged in a trade or business for the purpose of characterizing gain of a partner from the sale and (3) if the property is deemed to be used in a trade or business, whether the Director, by regulation, properly included in the tax, gain on property used in a trade or business.

The parties entered into a stipulation of facts which included affidavits of Donald Swift and Robert Malesardi, and tax returns and other documents relating to the assessments. Pursuant to the stipulation, the Director conducted cross-examination of taxpayers' affiants and presented testimony of a tax analyst.

The following appear from the stipulation of facts. Taxpayers are partners in a general partnership known as Dean Management Company, hereinafter referred to as "DMC." On October 31, 1968 DMC purchased three apartment buildings. The two buildings which are the subject of this litigation are known as the "Chester Place property" and the "Prospect Avenue property." In 1975, Malesardi, Quakenbush, Swift and Company, a firm of certified public accountants, hereinafter referred to as "MQS," provided management services for the properties. DMC paid for all property taxes, maintenance and operating expenses, insurance premiums and repair costs and kept separate records. In addition to their association with DMC, taxpayers Swift and Malesardi are partners of MQS.

The Prospect Avenue property was sold in May 1975 for $705,000, for a net gain of $345,580, and the Chester Place property was sold in December 1975 for $335,000, for a net gain of $142,821. The gain realized by the five taxpayers was allocated as follows:

| | Gain from Land Sale | Gain from Apt. Bldg. Sale | Total Gain |
|---|---|---|---|
| Robert Malesardi | $ 13,419 | $ 167,585 | $ 181,004 |
| Daniel Dinzik | 5,591 | 69,842 | 75,433 |
| Robert Schiffer | 4,473 | 55,846 | 60,319 |
| Richard Malesardi | 4,473 | 55,846 | 60,319 |
| Donald W. Swift | 4,473 | 55,846 | 60,319 |

For federal income tax purposes taxpayers treated the property as *I.R.C.* § 1221(2) and *I.R.C.* § 1231(b)(1) assets. Section 1221 defines the term "capital assets" but excludes from this definition certain property used in a trade or business. Section 1231 permits capital gain treatment on certain property despite its exclusion from the definition of capital asset in § 1221(2). Each taxpayer reported his gain from the sale of the apartment buildings on his 1975 federal income tax return as a § 1231 gain.

Taxpayers did not report their gain from the 1975 sales on their 1975 New Jersey capital gains tax returns on the ground that the gain was specifically excluded from tax under the statute. Having paid excess estimated tax, taxpayers claimed refunds for 1975. Following are the refunds claimed by each taxpayer which form the basis of this litigation:

| | | |
|---|---|---|
| Robert Malesardi | $9,454.85 | |
| Daniel Dinzik | 4,588.68 | |
| Robert Schiffer | 3,745.00 | + assessment of $54.00 |
| Richard Malesardi | 3,755.54 | + assessment of $20.52 |
| Donald W. Swift | 3,045.87 | |

At trial Robert Malesardi testified that it was sometimes difficult for him to determine whether he was acting in his capacity as a partner of DMC or MQS. Malesardi testified that MQS performed the day-to-day functions of operating the property. MQS established budgets, negotiated leases, collected rents, evaluated prospective tenants, performed routine maintenance, dealt with routine tenant complaints and managed the

escrow account for the rent deposits. Tenant rent checks were paid directly into a DMC account.

Major operational decisions including those involving major repairs, capital improvements, making leases, renewing expiring leases and determining whether to raise rents were decisions made by the partners of DMC.

I

Gain on the sale of a capital asset is taxable under the Capital Gains and Other Unearned Income Tax Act, *N.J.S.A.* 54:8B–1 *et seq.* Taxpayers contend that the subject apartment properties are not capital assets under the statute. They base their contention on the statutory definition of capital asset which specifically excludes gain from the sale of depreciable property used in trade or business. *N.J.S.A.* 54:8B–2(2).

The Director contends that the partnership was not engaged in a trade or business and that property owned by the partnership is a taxable capital asset under the act.

The recent case of *Newark Building Associates v. Taxation Div. Director*, 128 *N.J.Super.* 535 (App.Div.1974), dealt with the taxability of a partnership under the Unincorporated Business Tax Act. The entire building owned by the partnership was the subject of a net lease under which the lessor did not manage or operate the property. The sole function of the lessor was to accept rent payments and distribute the proceeds to the partners. The court, in holding that the partners were not engaged in a trade, business, profession or occupation, established a test for distinguishing between engaging in business and acting as a passive investor. The court stated:

... one who actively participates, directly or indirectly, *e.g.*, through an agent, in the management of property he owns, is in business while one who allocates such management to others and himself performs only such acts as are appropriate to safeguard his ownership, including distribution of income from the property, is not. The latter is considered an investor who passively receives income. The determination of the issue, of course, depends upon the facts of the particular case. [at 540–541]

■ In the present case the DMC properties were multifamily apartment properties. They were leased on a gross rental basis with the usual services furnished by landlord to tenant. Although many services were provided through an agent, major operational decisions were made by DMC. In some cases it was difficult to determine when an activity was being performed by DMC and when by MQS. The fact that DMC used an agent to perform administrative functions does not of itself establish that the partnership owner was a passive investor. *Newark Building Associates, supra; Alvary v. United States*, 302 *F.*2d 790, 796 (2 Cir. 1962).

We hold that the test established by *Newark Building Associates* for distinguishing between engaging in business and acting as a passive investor, applied there to the unincorporated business tax, should also be applied to the subject tax. The rationale of *Newark Building Associates* is more contemporary and more persuasive than the earlier New York cases of *People ex rel. Voelkel v. Browne*, 268 *App.Div.* 596, 52 *N.Y.S.*2d 822 (App.Div.1944), aff'd o.b. 294 *N.Y.* 834, 62 *N.E.*2d 390 (Ct.App. 1945), and *People ex rel. Nauss v. Graves*, 283 *N.Y.* 383, 28 *N.E.* 2d 881 (Ct.App.1940), relied on by the Director.

We also find support in the rationale utilized in *Fackler v. Commissioner*, 133 *F.*2d 509 (6 Cir. 1943). In *Fackler* the issue was whether a practicing attorney who operated a building was engaged in the trade or business of renting residential real estate properties. The court held that the taxpayer was in the business of renting real estate despite his full-time attention to the practice of law. The court stated:

> ... the fact that the petitioner was engaged in the practice of law does not at all negate the fact that he was also engaged in the business of operating the building. The management of the property necessarily involved alterations and repairs commensurate with the number of tenants who occupied the building. It was also necessary to furnish elevator service, heat, light and water which required regular and continuous activity and the employment of labor, the buying of material and many other things which come within the definition of business. [at 512]

The distinction between a passive investor and one who actively engages in a trade or business depends on the facts of the particular case. If property is leased to a single tenant under a long-term net lease which requires the tenant to provide all operational and management services, the owner who merely receives the net rental is a passive investor. If property is leased to many tenants under short-term gross leases where the landlord directly or indirectly provides operational and management services, the owner is engaged in a trade or business.

We conclude that the activity of the partnership in the subject case constitutes a trade or business. The partnership was in the business of owning and operating apartment house property and leasing apartments to tenants. Many gross leases were entered into which required the landlord to furnish customary apartment house services to the tenants, unlike a single-tenant, net-leased property.

## II

Although a partnership is a separate legal entity, it is not subject to tax under New Jersey or federal law. Each of the partners is liable in his individual capacity for tax on the sale of partnership assets. *N.J.S.A.* 54:8B–2; *I.R.C.* §§ 701, 702 and 703; *Treas.Regs.* §§ 1.701–1, 1.702–1, 1.702–2 and 1.703–1. In *United States v. Basye*, 410 *U.S.* 441, 93 *S.Ct.* 1080, 35 *L.Ed.*2d 412 (1973), the Supreme Court of the United States stated that:

> ... the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed. [at 448, 93 *S.Ct.* at 1085]

Under federal tax law the characterization of partnership property as held in a trade or business or held for investment is determined at the partnership level.[2] It is the activity of the partnership as an entity rather than the activity of the individu-

---

[2]There has been disagreement over whether the character of the gain is to be determined at the partnership level and passed through to the partners or

al partners that must be examined to determine the nature of the property. *Treas.Reg.* § 1.702–1(b); *Goodwin v. Commissioner*, 75 *T.C.* 424, 436 (1980); *Barham v. United States*, 301 *F.Supp.* 43, 46 (M.D.Ga.1969), aff'd per curiam 429 *F.2d* 40 (5 Cir. 1970).

■ The requirement in the New Jersey Capital Gains and Other Unearned Income Tax Act that gains from the sale or exchange of capital assets be defined by the Director in a manner "consistent with definitions prescribed for federal income tax purposes," leads to the conclusion that treatment of partnership gains under the New Jersey act should accord with treatment of partnership gains for federal tax purposes. We conclude that the determination of the character of the gain must be made at the partnership level and this determination passed through to the individual partners. We reject the Director's argument that gains realized by Daniel Dinzik, Robert Schiffer and Richard Malesardi are to be treated differently from those realized by Robert Malesardi and Donald W. Swift. All partners of DMC must be treated similarly once the trade or business nature of the partnership asset has been determined.

Were we to characterize the gains realized by the taxpayers at the level of each partner, the result would be the same. The evidence presented indicates that all partners of DMC participated in decisions concerning the operation of the partnership and that all partners were in the trade or business of renting residential properties.

### III

Having concluded that the partnership was engaged in a trade or business and that the partners are regarded as being engaged

---

whether it must be determined individually for each partner. The majority of cases, including the recent United States Tax Court decision in *Goodwin v. Commissioner*, 75 *T.C.* 424, 436 (1980), hold that the characterization of gain is made at the partnership level. See Fellows, "Partnership Taxation: Confusion in Section 702(b)," 32 *Tax Law Rev.* 67 (1976).

in a trade or business, we must determine whether the Director, by regulation, properly included in the tax, gain on property used in a trade or business.

The Capital Gains and Other Unearned Income Tax Act, *N.J.S.A.* 54:8B–1 *et seq.*, provides that gains from the sale or exchange of capital assets are to be defined by regulation of the Director consistent with federal income tax definitions. Notwithstanding this grant of authority to the Director to define gains from the sale or exchange of capital assets, the Legislature expressly excluded from the term "capital asset" five categories of property. These five categories were taken almost verbatim from § 1221 of the Internal Revenue Code. Section 1221(2) excludes from the definition of capital asset "property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in § 167, or real property used in his trade or business." The New Jersey Legislature substituted the words "in regulations promulgated by the Director" for the Internal Revenue Code reference to § 167 with respect to depreciation, and deleted the reference to real property used in trade or business.

Pursuant to his authority to issue regulations, the Director promulgated *N.J.A.C.* 18:30–6.10, which provided:

Any net "Section 1231" gain resulting from sales, exchanges and involuntary conversions of real or depreciable property used in a trade or business . . . which is reported as capital gains for Federal income tax purposes shall also be treated and reported as capital gains for New Jersey unearned income tax purposes.

The Director argues that this is a valid legislative and interpretive regulation that has the force and effect of law. The Director supports his position by reliance on revenue estimates prepared at the time the act was adopted. These estimates were taken from federal capital gains tax statistics and include tax on gains from sale of depreciable property used in a trade or business (§ 1231 assets). *Statistics of Income 1972 Individual Income Tax Returns,* 281, Department of the Treasury, Internal Revenue Service Publication 79 (1–75). The Director argues that the fiscal notes included these estimates unreduced by a

figure reflecting the exclusion of the tax on the gains from the sale of § 1231 assets. The Director notes that projected revenue estimates were changed to reflect the reduction in tax rate from that in the original bill but no similar change was made for the deletion of § 1231 income.

The Director's argument that the fiscal note and statistics indicate a legislative intent to tax gain from the sale of § 1231 assets is outweighed by the express language of the act, which excludes property used in trade or business of a character subject to allowance for depreciation.

The Director also supports his argument by reference to Assembly Bills 895 and 3556 and the history of the definition of "capital asset." The Director contends that the Legislature did not fully understand the technical distinctions between capital assets and § 1231 assets. He argues that the Legislature acted in haste to resolve a budget crisis and, notwithstanding the wording of the act, did not intend to exempt § 1231 assets from taxation under the act.

The Director's regulation seeks to bring depreciable property used in a trade or business within the taxable ambit of the act, in contravention of the express words of the statute excluding property used in the trade or business. A clear and unambiguous statute is not subject to interpretation. *Duke Power Co. v. Patten*, 20 *N.J.* 42, 49 (1955).

The Director states that the New Jersey Capital Gains and Other Unearned Income Tax Act was modeled after the Connecticut Capital Gains Tax Act. He also states that the Connecticut Tax Commissioner has employed a similar regulation to provide that § 1231 assets are taxable under the Connecticut act. He relies on the Connecticut regulation as authority for the New Jersey regulation. However, the Connecticut act does not exclude depreciable property used in a trade or business from the definition of capital asset, as does the New Jersey act. Therefore, the Connecticut regulation does not support the validity of the New Jersey regulation.

In enacting *N.J.S.A.* 54:8B–2 the Legislature excluded from the definition of capital assets three categories of trade or business property: (1) stock in trade of the taxpayer, (2) depreciable property used in the trade or business and (3) accounts receivable acquired during the ordinary course of business. The exclusion of depreciable property used in the trade or business is enumerated in the act as all property "of a character which is subject to the allowance for depreciation . . ." Any property, whether real or personal, that is depreciable falls within this exclusion, even though the words "real property used in his trade or business" found in *I.R.C.* § 1221(2) were not expressly incorporated into the New Jersey act. Nothing in the act indicates that the Legislature intended to exclude from tax only depreciable personal property.

In § 1221(2) of the Internal Revenue Code property used in the taxpayer's trade or business is excluded from the definition of capital asset. However, under the federal system of taxation, property which has lost capital asset status can have that status restored if the provisions of § 1231 are met.

In the New Jersey act depreciable property used in the trade or business also loses capital asset status, with the result that it is not taxed. *N.J.S.A.* 54:8B–2(2). There is no New Jersey legislative provision comparable to *I.R.C.* § 1231, which restores to property the capital asset status lost by virtue of *N.J.S.A.* 54:8B–2(2). The Director, by promulgation of *N.J.A.C.* 18:30–6.-10, has attempted to write § 1231 into the New Jersey act to return property excluded under *N.J.S.A.* 54:8B–2(2) to taxable capital asset status. We hold that this attempt by the Director is unauthorized and contravenes the express language of the act. *Feld v. Taxation Div. Director*, 3 *N.J.Tax* 476 (Tax Ct.1981).

## IV

We conclude that:

1. DMC is in the trade or business of renting apartments;
2. The partners are regarded as being engaged in a trade or business;

3. Gain from the sale of depreciable property used in the trade or business is expressly excluded from tax by the act and cannot be included by regulation of the Director. Gain from the sale of the land does not fall within the exclusion and is taxable.

The Clerk of the Tax Court is directed to enter judgment in favor of the taxpayers, granting a refund of tax paid on the gain realized on the sale of the improvements. The judgment will be based on computations to be submitted by the parties, pursuant to R. 8:9–3.