CONLEY, J.T.C.
This case involves plaintiff’s challenge to an assessment of $2,336.81 plus interest under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. In his complaint plaintiff recites that in 1977 he engaged in numerous “arbitrage operations” involving the purchase of many thousands of shares of stock and that he incurred $93,362 in interest charges associated with the transactions. Plaintiff also incurred New York City stock transfer taxes of $110. It is plaintiff’s position that his trading operations “should be treated as a business” so that he could deduct interest and stock transfer tax payments in computing his “net profits from business” pursuant to N.J.S.A. 54A:5-l(b).
In 1977 plaintiff had a cash account, margin account, short account and bond account with the brokerage firm of Kalb, Voorhis & Co. in New York City. During this time there were 283 trades through plaintiff’s various accounts, representing the purchase and/or sale of 279,409 shares with a total transactional value of $5,473,082. These transactions ranged in size from the purchase of 30,300 shares of Kaiser Industries stock for $515,425 to the disposition of a 10% Argent bond for $112. As a result of all these trading activities plaintiff received $18,155 in interest income and $65,376 in dividend income in 1977. He also had total capital gains of $212,738 and total capital losses of $30,042, resulting in a net capital gain of $182,696 for 1977. During the same year plaintiff incurred interest charges on his margin account at Kalb, Voorhis & Co. and on loans from his father, obtained when plaintiff needed additional sums to meet the margin requirements of his brokerage account. The total of these interest payments was $93,362, the amount disallowed by the Director when he audited plaintiff’s gross income tax return (in addition to his denial of the deduction of the stock transfer tax payments of $110).
On his 1977 gross income tax resident’s return plaintiff reported “net profits from business” of $89,224 under “other income” on line 34. This net figure reflected plaintiff’s deduction from his investment income of interest and stock transfer *76 tax payments. After an audit the Director adjusted plaintiff’s “net profits from business” from $89,224 to $182,696 and adjusted plaintiff’s New Jersey gross income from $172,754 to $266,-226. The Director’s stated reason for the change was that he had adjusted plaintiff’s reported “other income” to include “total capital gains [of $182,696] at 100% as reported on Federal Schedule D.” The Director’s deficiency assessment was $2,336.81 plus interest.
The securities trading relied on by plaintiff as a business was conducted on his behalf, pursuant to a power of attorney, by his father, Louis Applestein, a certified public accountant. During 1977 plaintiff was a full-time college student at Rutgers, The State University, majoring in environmental political science. The deposition testimony of plaintiff Scott Applestein and his father Louis Applestein clearly indicated that all decisions regarding any purchases and/or sales of securities for the accounts of Scott Applestein were made by his father Louis Applestein. Plaintiff was not involved in any bookkeeping associated with the accounts and only reviewed the financial results of the trading when he had to fill out his income tax returns. Plaintiff testified that he did not consider himself “financially astute”; that he never met with his broker at Kalb, Voorhis & Co. and that he never read the financial section of a newspaper during the period in question. However, his father continuously studied the financial markets, concentrating particularly on mergers, tender offers and liquidations. Louis Applestein also maintained the ledger sheets for the various financial transactions that were made in plaintiff’s name.
There is no genuine issue between the parties as to any material fact. Accordingly, plaintiff filed a motion for summary judgment and the Director filed a cross-motion for summary judgment. R. 4:46-1 et seq. The Director argues first that plaintiff was not engaged in a securities trading business because (a) he did not actively participate in the management of his securities portfolio and (b) the business of plaintiff’s father cannot be imputed to plaintiff. The Director argues in the alternative that the federal income tax status of “trader” has *77 not and should not be recognized under the New Jersey Gross Income Tax Act, so that even a taxpayer who trades regularly and extensively in various securities for his own account cannot be considered the operator of a business for purposes of N.J.S.A. 54A:5-l(b).
The provision of the Gross Income Tax Act at issue in this case states that New Jersey gross income shall consist of “net profits from business.” The definition of “net profits from business” is as follows:
.. . The net income from the operation of a business, profession, or other activity after provisions for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income. [N.J.S.A. 54A:5~l(b)]
Thus, in order for plaintiff to be able to deduct interest charges and stock transfer charges from his gross income, plaintiff’s trading of securities for his own account must constitute a business under N.J.S.A. 54A:5-l(b). Since plaintiff took no part at all in the trades conducted through his various accounts, the court must first determine whether the trading activity conducted by plaintiff’s father can be imputed to plaintiff through an agency relationship, thereby permitting the deductions as business expenses.
With respect to an analogous issue of whether a taxpayer was engaged in the real estate business or was merely a real estate investor, the Appellate Division has defined the difference as follows:
. . . [0]ne who actively participates directly or indirectly — e.g., through an agent — in the management of property he owns, is in business, while one who allocates such management to others and himself performs only such acts as are appropriate to safeguard his ownership, including distribution of income received from the property, is not. The latter is considered an investor who passively receives income. The determination of the issue, of course, depends upon the facts of the particular case. . . Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); . . . Flint, supra, early defined ‘business’ as that ‘which occupies the time, attention and labor of men for the purpose of a livelihood or profit.’... The emphasis is on an active role in the production of profit. [Newart Building Associates v. Taxation Div. Director, 128 N.J.Super. 535, 540-541, 320 A.2d 867 (App.Div.1974); emphasis supplied]
*78 The distinction drawn in Newark Building Associates between a taxpayer in the real estate business and a taxpayer who merely invests in real estate was followed by the Tax Court in determining whether a partnership’s ownership and operation of apartment houses constituted a trade or business. Swift v. Taxation Div. Director, 183 N.J.Super. 378, 4 N.J.Tax 115, 443 A.2d 1132 (Tax Ct.1982). The taxpayers in Swift owned and operated two apartment houses which they sold in 1975. They sought to have the gain from the sale declared nontaxable under the Capital Gains and Other Unearned Income Tax Act, N.J.S.A. 54:8B-1 et seq., as gain from the sale of depreciable property used in a trade or business. N.J.S.A. 54:8B — 2(2). In distinguishing between a passive investor and one who actively engages in trade or business, Judge Lasser noted in Swift that:
The distinction between a passive investor and one who actively engages in a trade or business depends on the facts of the particular case. If property is leased to a single tenant which requires the tenant to provide all operational and management services, the owner,who merely receives the net rental is a passive investor. If property is leased to many tenants under short-term gross leases where the landlord directly or-indirectly provides operational and management services, the owner is engaged in a trade or business. [4 N.J.Tax at 121, 443 A.2d 1132]
The distinction noted in Swift and in Newark Building Associates is similar to the distinction used by the federal courts in determining whether a taxpayer’s management of his own investments constitutes a “trade or business” under the Internal Revenue Code. In such cases the distinction has been drawn between taxpayers who actively participate in the management of their properties and taxpayers who merely keep records and perform other acts to safeguard their ownership interest. Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); Levin v. U.S., 597 F.2d 760 (U.S.Ct.Cl. 1979).
In Higgins the taxpayer resided in France and maintained an office in the United States to supervise the bookkeeping and other aspects of his security transactions by cable, telephone and mail. The New York office kept records; received securities, interest and dividend checks; made deposits; forwarded weekly and annual reports and generally undertook care of the invest *79 ments as instructed by the owner. However, all purchases for the taxpayer were made by a financial institution. The investments sought by the taxpayer were mostly permanent investments, but he did make limited changes in his portfolio. In determining whether the taxpayer’s activities constituted the “carrying on of a business,” the court noted that a case-by-case factual analysis is required. The court stated:
The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse.... [312 U.S. at 218, 61 S.Ct. at 478, 85 L.Ed. at 788]
The deductions sought by the taxpayer for salaries and other expenses incurred in watching over his own investments in securities were therefore not allowed as expenses paid or incurred in carrying on a trade or business.
Under the analysis set forth in Higgins, a taxpayer who merely supervises or oversees his investments, even though his supervision is continuous or extensive, is not himself engaged in a trade or business. If any party in Higgins could have been found “engaged in a business,” it would probably have been the persons or financial institutions which actually did the trading. Plaintiff in the present case did not carry on any actual trading nor did he in any way supervise, manage or look after his investment accounts. Under the Higgins rationale plaintiff would not be considered engaged in a trade or business.
The Higgins rationale has been employed extensively to determine whether a taxpayer trading securities for his own account was actually “carrying on a business” or merely managing his own investments. Levin v. U.S., supra at 765; Purvis v. Commissioner of Internal Revenue, 530 F.2d 1332 (9 Cir.1976); Walsh v. Taxation Div. Director, 183 N.J.Super. 370, 4 N.J.Tax 107, 443 A.2d 1128 (Tax Ct.1982). In each of these cases a factual analysis of the taxpayer’s particular securities activity was made to determine if his activity constituted the carrying on of a business. Factors such as the frequency, extent and regularity of the taxpayer’s securities transactions, the amount of personal investigation of his assets and his intent to gain *80 income from relatively short term turnovers, have been employed by the federal courts to determine this issue. See Frank B. Polachek, 22 T.C. 858 (1954); Norbert H. Wiesler, 6 T.C. 1148 (1946).
When the individual taxpayer’s securities transactions were not extensive or frequent and he did not personally investigate his assets or become otherwise actively involved in the securities transactions, the trading activity was held not to constitute a business. Purvis v. Commissioner of Internal Revenue, supra. In Purvis the taxpayer engaged in 75 sales of securities and ten short-term commodities sales between 1963 and 1968. Although the taxpayer testified that he traveled to Canada once a month to investigate his Canadian mining stocks, the court found that the trips were associated with his duties as a member of the board of directors for the mining companies. The court also noted that the taxpayer listed his occupation as attorney on his tax returns and filed a Schedule C (“Profit (or loss) from Business or Profession”) in connection with his law practice for the subject years and not in connection with his securities transactions. Moreover, the taxpayer did not keep a separate account, an office or personnel in connection with his securities activities. After considering these facts the court found that the taxpayer’s activity did not constitute a “trade or business” for purposes of § 172 (operating loss carryover) and § 162(e) of the Internal Revenue Code of 1954. 26 U.S.C.A. § 172; 26 U.S.C.A. § 162(e).
However, when a taxpayer’s income was derived substantially from his extensive securities trading, his whole workday was devoted to such trading and the judgments concerning purchases and sales were made directly by the taxpayer after personal investigation, the taxpayer’s trading activity was held to constitute a business for purposes of § 166 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 166. Levin v. U.S., supra. In Levin the taxpayer personally visited the corporations in which he was interested, talked with company officers and generally investigated the companies’ operations and management. The taxpayer attended lectures sponsored by securities analysts and stock *81 holder meetings. He maintained ledger sheets of all his transactions and was directly involved in purchasing and selling for his own account. He traded with four to six brokerage houses, conducted 332 transactions representing 112,400 shares and a total value of $13,452,125 for the year in question. Based on these facts the court concluded that “the taxpayer was generally carrying on the business of trading for his own account.” 597 F.2d at 765.
All of these cases have a common theme, i.e., the extent of personal involvement by the particular taxpayer. It is my conclusion that in order for a taxpayer to be engaged in the “business” of trading securities within the intent of N.J.S.A. 54A:5 1(b) he must actively participate in or have an active role in the trading activity. Although a taxpayer may actively participate in the activity through an agent, the taxpayer’s participation must still be active. It is clear from the deposition testimony of plaintiff Scott Applestein and his father Louis Applestein that plaintiff had no personal involvement in the securities transactions made through plaintiff’s various accounts with Kalb, Voorhis & Co. All securities transactions and investment decisions were made by Louis Applestein based on his knowledge and investigation of the financial industry. Plaintiff did not review the actions taken by his father until he had to file his annual income tax return. Plaintiff remained a full-time college student during the period in question and did not have an “active role in the production of profit” from the securities accounts. Newark Building Associates v. Taxation Div. Director, supra 128 N.J.Super. at 541, 320 A.2d 867. Whatever status plaintiff’s father might have from trading through plaintiff’s accounts cannot be imputed to plaintiff.
I affirm the Director’s deficiency assessment in all respects for the reasons stated above. There is no need in this case to deal with the alternative issue raised by the Director, which is whether under other circumstances a taxpayer who trades regularly and extensively for his own account can be considered the operator of a business for purposes of reporting net profits under N.J.S.A. 54A:5 1(b).