ANDREW, J.T.C.
In these three state tax actions consolidated for decision, plaintiffs Vincent B. Murphy, Jr. and Patricia Murphy (Murphys), Henry Kaufman and Elaine C. Kaufman (Kaufmans), and Jason M. Elsas, Jr. and Patricia Elsas (Elsases), all New Jersey residents, seek a refund of taxes assessed against them for the tax year 1975 by defendant Director of the Division of Taxation, pursuant to the New Jersey Tax on Capital Gains and Other Unearned Income Act, N.J.S.A. 54:8B-1 et seq. (the act), since repealed.[1]
While in effect, the tax in issue was imposed upon “unearned income” which was earned, received or constructively accrued or credited to taxpayer during the taxable year. N.J.S.A. 54:8B-3. “Unearned income” was defined by N.J.S.A. 54:8B-2 as:
... dividends, gains from the sale or exchange of capital assets, interest, royalties, income from an interest in an estate or trust pursuant to regulations of the director and compensation derived from a partnership or corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for personal services actually rendered.
The act went into effect immediately upon approval by the Governor on August 4, 1975, and applied to unearned income *225 earned, received or constructively accrued or credited to the taxpayer on or after January 1, 1975. See L.1975, c. 172, § 25; Klebanow v. Glaser, 80 N.J. 367, 370, 403 A.2d 897 (1979).
There are two issues presented by the parties. The primary question for decision by this court is whether distributive shares of capital gains of a securities partnership are taxable to the partners under the act. If the partners are found to be subject to the tax on such distributive shares, then this court must also decide whether capital gains realized by a partnership prior to January 1, 1975, but reported by the partners on their 1975 federal income tax returns, are taxable under the act. The parties have stipulated the following facts.
At all times relevant to this case, Henry Kaufman, Jason M. Elsas, Jr. and Vincent P. Murphy, Jr. were general partners of Salomon Brothers, a New York limited partnership constituting a “partnership” within the meaning of the act. Salomon Brothers was one of the largest investment bankers in the United States actively engaged in the securities business. During its 1975 taxable year, the firm conducted transactions involving more than 202,000,000 shares of stock, and $293,000,000,000 in bonds.
Salomon Brothers was permitted under federal tax law to report gains from certain of these transactions as capital gains, which thereby received preferred tax treatment for federal income tax purposes. It is the taxability of these gains, allocated to Kaufman, Elsas and Murphy in distributive shares pursuant to a partnership agreement dated September 30, 1974, that is in controversy here.
The transactions from which these gains were generated involved securities which Salomon Brothers held for investment in accordance with federal tax requirements, rather than those securities held for sale to customers in the ordinary course of Salomon Brothers’ business. In order to be entitled to federal income tax capital gains treatment on the sale of these securities, a dealer in securities, such as Salomon Brothers, was required by the Internal Revenue Code of 1954, as amended, 26 *226 U.S.C. § 1 et seq. (I.R.C.) to identify securities' held for investment by the end of the thirtieth day after acquisition. I.R.C. § 1236.[2] Salomon Brothers identified such securities by recording them in specially denominated books and records. At the time, a security was required to be held for at least six months to qualify for federal income tax long term capital gain treatment. The capital gains in question here were derived, in nearly all cases, from securities acquired and resold by Salomon Brothers within a period of six to eight months.
The transactions giving rise to the capital gains, an average of 100 a day, involving securities having an aggregate value of more than $475,000,000, and yielding aggregate capital gains of more than $18,000,000, were conducted in the same manner and by the same individuals who conducted Salomon Brothers’ securities transactions not accorded capital gains treatment under the federal tax laws. No portion of the gains in question was attributable to sales of property other than securities traded by Salomon Brothers in the ordinary course of its business.
Salomon Brothers’ partnership agreement required that the general partners devote substantially all their time to the partnership, and that they refrain from engaging in any other activities without the prior consent of the executive committee of the partnership. In accordance with this agreement, Kaufman, Elsas and Murphy each performed substantial full-time services for the partnership and the distributive shares of earnings from Salomon Brothers were allocated to them in return for these services.[3]
Murphy was the senior partner in charge of the total operations of Salomon Brothers, supervising 600 to 700 employees. He also handled the firm’s oil and gas activities and had responsibility for office moves, design of premises, and commu *227 nications with various branch offices. As a member of the partnership’s executive committee, he also discharged numerous other management responsibilities.
Elsas was involved with the syndication of new issues of securities and their allocation to other dealers and to institutional accounts serviced by Salomon Brothers.
Kaufman was a highly respected economist and authority on interest rate trends. A member of the executive committee at Salomon Brothers, he was the chief economist of the partnership and in charge of the firm’s research department. On the basis of his research and analysis, he formulated economic and financial forecasts which formed the bases of the firm’s overall marketing and trading activities. His responsibilities also included meeting with and advising government officials and the senior management and boards of directors of corporations and financial institutions.
Salomon Brothers’ taxable year ends on September 30 annually. Each of plaintiffs’ taxable years end on December 31 annually. During Salomon Brothers’ 1975 taxable year (October 1, 1974 to September 30, 1975), Kaufman, Elsas and Murphy were each allocated distributive shares of Salomon Brothers’ profits and losses pursuant to the limited partnership agreement. The agreement governing the partnership’s 1975 taxable year was made September 30, 1974. This agreement fixed each partner’s percentage interest in partnership profits and losses for the partnership’s taxable year ending September 30, 1975.
The Kaufmans, Murphys and Elsases each paid estimated taxes under the Capital Gains and Other Unearned Income Act. They each filed timely returns for the taxable year 1975, requesting refunds of overpayments of the tax. Each plaintiff has received a portion of their claimed refunds representing the tax on their respective gains attributable to sales of federal obligations which defendant has conceded are not subject to the *228 tax. The amounts of tax paid and refunds requested are as follows:[4]
Kaufmans Elsases Murphys
Tax Paid $50,000.00 $30,000.00 $50,000.00
Refund originally claimed 49,987.63 29,941.00 47,756.00
Refund granted to date 8,552.76 9,877.14 5,467.45
Remaining refund requested $41,434.87 $20,063.86 $42,288.55
Plaintiffs contend that distributive shares of Salomon Brothers’ capital gains do not constitute “unearned income” taxable to the partners under the act. Simply stated, their argument is that the gains in question were realized by the partnership in the ordinary course of its business of trading securities, and were allocated to plaintiffs in return for substantial full-time services, that is, for work, and thus are not “unearned” within the meaning and intent of the act.
“Gains from the sale or exchange of capital assets,” is plainly a category of unearned income. N.J.S.A. 54:8B-2. The statute states that such gains are net gains as defined by defendant’s regulations, which are to be consistent with definitions prescribed for federal income tax purposes. Ibid. The pertinent regulations provide:
... “Gains from the sale or exchange of capital assets" means net gains as reported for Federal income tax purposes ... [N.J.A.C. 18:30-6.1(b) ]
Capital gains and losses include gains and losses treated as such for Federal income tax purposes. [N.J.A.C. 18:30-6.3]
The act further provides that, while a partnership itself is not subject to tax, the partners are liable in their individual capaci *229 ties in the same manner in which they would be liable for partnership income under the federal income tax laws. N.J.S.A. 54:8B-6(b); N.J.A.C. 18:30-13.1(b). Consistent with the relevant federal provision, I.R.C. § 702(b), the regulations require that each item of partnership income or gain shall have the same character to a partner as it had for federal income tax purposes. N.J.A.C. 18:30-13.1(c).
The income in question was reported for federal income tax purposes by Salomon Brothers and plaintiffs as capital gains, and would clearly appear to be taxable to plaintiffs under the act. Plaintiffs urge this court, however, to look beyond the plain words of the statute at the intent of the Legislature which, plaintiffs contend, was to tax only unearned income that was passively acquired.
A clear and unambiguous statute is not open to interpretation or construction. MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), aff'd o.b. per curiam 89 N.J. 216, 217, 445 A.2d 397 (1982); In re Jamesburg High School Closing, 83 N.J. 540, 547-548, 416 A.2d 896 (1980); Feld v. Taxation Div. Director, 3 N.J.Tax 416, 479 (Tax Ct.1981). Plaintiffs argue, though, that, at least upon the facts of this case, the statute is ambiguous and internally inconsistent, and that the court should construe the act so as to find their gains not subject to the tax.
Plaintiffs point to that part of N.J.S.A. 54:8B-2 which includes within the definition of “unearned income” partnership compensation representing a distribution of earnings or profits rather than a reasonable allowance as compensation for personal services actually rendered. Plaintiffs note that the income in question here is partnership compensation for services rendered, and that defendant has not attacked the amounts received as unreasonable. They refer also to N.J.A.C. 18:30-9.1(b), which provides, in relevant part:
“Unearned income” shall not include wages, salaries or professional fees, and other amounts received as compensation for personal services actually rendered; but that part of such compensation which represents a distribution of earnings *230 or profits rather than a reasonable allowance as compensation for personal services actually rendered shall be subject to tax as follows:
1. Where personal services are a material income producing factor, an individual who is a partner or a stockholder shall not be deemed to have derived excess compensation for personal services performed unless such person performs little or no service...
2. Where little or no personal services are performed, the amount which shall be considered as excess compensation for personal services by an individual shall be the amount in excess of 50 per cent of his share of the net profits of the partnership or 50 per cent of the amount received by such stockholder in the case of a corporation.
Example: Partner A and partner B perform personal services for the partnership; however, partner C performs little or no service because of his contribution of capital to the partnership. Partners A and B are not deemed to have excess compensation derived from the partnership. However, partner C would be deemed to have excess compensation from the partnership if the amount that he receives from the partnership exceeds $25,000. The excess compensation shall represent 50 percent of the amount of his share of the net profits of the partnership.
3. With respect to determining excess compensation under this section, in no event shall any amount less than $25,000 be considered unearned income. Where the amount received by the partner exceeds $25,000, the first $25,000 shall not be subject to tax.
Plaintiffs contend that pursuant to the statute and the regulation, partnership income, even the capital gain income at issue here, allocated to a partner in exchange for personal services actually rendered, is not “unearned income” subject to the tax.
This argument is not persuasive. The statute does not indicate in any way that an item of income which could be characterized both as capital gains income and as reasonable compensation for services performed for a partnership is exempt from the tax. The act plainly states that “gains from the sale or exchange of capital assets” is one of six categories of unearned income and therefore taxable. The act does not provide that income, otherwise taxable under the act, is exempt if received as reasonable compensation for services rendered to the partnership.
The regulation on the other hand is, at first glance, more supportive of plaintiffs’ position. It purports to exclude from unearned income and from the tax, amounts received as compensation for personal services actually rendered. As defendant observes, however, the regulations treat in a separate subchap *231 ter each category of unearned income, one without reference to the other. While N.J.A.C. 18:30-9.1(b) states that unearned income does not include amounts received from a partnership as compensation for personal services actually rendered, the regulations read as a whole compel the conclusion that such amounts which are also capital gains are subject to the tax. Even if N.J.A.C. 18:30-9.1(b) were to be construed by this court to support plaintiffs’ position, an agency’s interpretation of a statute is not conclusive, and must be overriden when it is contrary to the meaning of the statute. Service Armament Co. v. Hyland, 70 N.J. 550, 561-562, 362 A.2d 13 (1976); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964).
Plaintiffs nevertheless argue that even if the income in controversy constitutes capital gains, seemingly subject to the tax, it is not “unearned income” which the Legislature intended to tax. Their contention rests on the thesis that the Legislature did not intend to tax income which is the product of the active conduct of a business.
Plaintiffs note that N.J.S.A. 54:8B-3(a) imposes the tax on “unearned income” rather than on capital gains, and assert that “unearned income” is, conceptually, income which has been passively earned. They observe that the six categories of income listed in N.J.S.A. 54:8B-2, defining “unearned income,” are usually the products of passive investment of capital, rather than the active conduct of a business.
By way of support, plaintiffs cite various administrative interpretations of the act that have excepted from the tax forms of income which would otherwise have come within the reach of the tax. Plaintiffs perceive correctly that the exceptions were apparently made because the income in question was “actively” earned.
For example, in Att’y. Gen. F.O. 1976, No. 1, a lump sum distribution to an employee from a qualified pension plan, receiving capital gains treatment for federal income tax purposes, was determined to be non-taxable under the act. The income was regarded as deferred compensation for previously *232 rendered services. N.J.A.C. 18:30-6.11 conforms with this conclusion.
Similarly, in Att’y. Gen. F.O. 1976, No. 12, it was concluded that income derived by authors in the form of royalties paid for the rights to use their writings was not subject to the tax, even though “royalties” were specifically named by N.J.S.A. 54:8B-2 as a category of unearned income. This opinion was based on the inference that the Legislature intended to tax only those forms of royalty income which represent investment income, or a return on capital, rather than royalty income which is the product of individual effort. See also N.J.A.C. 18:30-7.1, which defines royalties, but provides in subsection (c) that royalties to authors, inventors or others from property created by the personal efforts of such persons are not subject to the tax.
The statute clearly evidences an intent to tax only “passively” earned income in the sense of income which is the product of invested capital. See Att’y. Gen. F.O. 1976, No. 12, supra. Each of the six categories of unearned income enumerated by N.J.S.A. 54:8B-2 are, as plaintiffs note, normally derived from the passive investment of capital rather than the active conduct of a business. Further indication of this intent is found in the statutory provisions which exclude from the term “capital asset,” and thus from the tax on the gain from the sale or exchange of a capital asset, certain property which is regularly sold or exchanged in the conduct of a trade or business, such as stock in trade,[5] and accounts receivable acquired in the ordinary course of business. N.J.S.A. 54:8B-2. Even the term employed by the Legislature, “unearned income,” leads to the conclusion that the Legislature intended to tax income which was produced by something other than what usually would be deemed “work.”
*233 The flaw in plaintiffs’ argument lies in their characterization of the gains in question as active rather than passive income. Even though the transactions in controversy were the same kind of activities that constituted Salomon Brothers’ ordinary business, and despite the fact that the transactions were conducted in the same manner and by the same individuals who conducted Salomon Brothers’ securities transactions not accorded capital gains treatment, the fact remains that the securities generating the income had been set aside for investment.
That Salomon Brothers was engaged in the securities business, and that plaintiffs played an instrumental role in generating this income, can be regarded as no more than coincidental. The income was a return on capital, that is, passive income, and not derived from work, within the meaning and intent of the statute. There would appear to be no difference between the activities of Salomon Brothers and plaintiffs and the activities of a partnership which was not primarily engaged in the securities business, but which set aside partnership capital for investment in the securities market. The trading by Salomon Brothers might have been more skillful than that conducted by a group of doctors or lawyers, for example, but was still in the nature of an investment activity, the income from which was intended to be taxed by the act. It may be presumed that an intelligent investor performs a certain amount of work in selecting securities to purchase, and in deciding when to buy and sell. The amount of work and the skill with which it is performed do not change the essential nature of the income.
Plaintiffs emphasize the great number and dollar value of the transactions involved, thereby attempting to describe the income as a product of active trading, rather than of passive investment. They rely upon the following:
The distinction between an investment account and a trading account is that in the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of the securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis. *234 [Chaing Hsiao Liang, 23 T.C. 1040, 1043 (1955); Accord Purvis v. Commissioner, 530 F.2d 1332 (9 Cir.1976)]
In this case, while there were frequent daily transactions, the securities in nearly all cases were held for six to eight months. The frequency of the transactions is attributable to the large number of securities bought, held for the requisite period to secure federal long term capital gains treatment, and then sold. It cannot be said that the securities in question were bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market and to profit on a short term basis. The securities were identified for investment and held for investment. The consequence of these actions is to subject the gains to the New Jersey tax.
There is no ambiguity or internal inconsistency in the act regarding the taxation of the income in question. Plaintiffs’ distributive shares of the partnership’s capital gains were clearly intended to be taxed and the relevant statutory provisions plainly state that such gains were taxable. Any ambiguities and inconsistencies which may be discerned arise from the administrative interpretations of the act rather than from the statute itself.
Plaintiffs allege that the taxation of the income in question is inconsistent with defendant’s regulation N.J.A.C. 18:30-3.5, which exempts from the tax interest and dividends of a securities dealer. Plaintiffs contend that the failure to exclude their capital gains income from “unearned income,” while excluding securities dealers’ interest and dividend income is arbitrary and irrational, since all such income is generated by the active conduct of a securities business.
It is true that the act plainly specifies that interest and dividends are taxable categories of unearned income. N.J.S.A. 54:8B-2, -3. As stated earlier, an unambiguous statute is not open to interpretation or construction, thus, it is not entirely clear whether defendant had the authority to promulgate the regulation in question.
*235 Plaintiffs do not attack the validity of the regulation, however, but argue instead that the difference in treatment between the several types of income received by those in the securities business is arbitrary and irrational. Plaintiffs believe that the promulgation of N.J.A.C. 18:30-3.5 was predicated on defendant’s conclusion that interest and dividends, which may constitute unearned income in some contexts, do not constitute unearned income to a securities dealer because they are the natural product of the active conduct of his business. They assert that there is no logical distinction between the interest and dividend income of a securities dealer and capital gains income which was the product of an active securities trading business.
Even accepting as true plaintiffs’ premise regarding the promulgation of the regulation,[6] ***6 Salomon Brothers’ activities generating the income in controversy were investment activities, not dealing activities.[7] Dividend and interest income which a securities dealer may receive from securities held in inventory for sale to customers is incidental to the conduct of his business. The securities which Salomon Brothers bought and sold here were held for investment, that is, capital appreciation and income, which is precisely what the Legislature intended to tax.[8]
*236 Plaintiffs contend, too, that the taxation of their income is inconsistent with the treatment of authors’ royalties and lump sum pension distributions which, they assert, are also expressly taxable on the face of the act.
The terms “royalties” and “gains from the sale or exchange of capital assets” are to be defined by regulations of defendant consistent with those prescribed for federal income tax purposes. N.J.S.A. 54:8B-2. Although “royalties” and “gains from the sale or exchange of capital assets” are both expressly stated to be categories of unearned income, items of income within those categories are taxable only if defined as such in defendant’s regulations.
Plaintiffs do not challenge the validity of N.J.A.C. 18:30-7.1(c), excluding certain royalties, or of N.J.A.C. 18:30-6.11, exempting lump sum pension distributions.[9] Nor do plaintiffs dispute the rationale of either Att’y. Gen. F.O. 1976, No. 12 or Att’y. Gen. F.O. 1976, No. 1, which deal with the same subjects respectively. They instead argue that their capital gains income should be similarly excluded from the tax because it, too, was “actively” earned, and that the taxability of their income is inconsistent with the treatment of such other income. Since this court has already determined that .plaintiff’s capital gains income was not actively earned but was the product of investment activities, it is apparent that the alleged inconsistency does not exist.
Having concluded that distributive shares of Salomon Brothers’ capital gains are taxable to plaintiffs, there remains the *237 question whether the gains realized by the partnership prior to January 1, 1975 are taxable to the partners.
The act was:
... applicable with respect to unearned income earned, received, or constructively accrued or credited to the taxpayer after January 1,1975. [L.1975, c. 172, § 25]
Plaintiffs’ taxable years end on December 31 annually. Salomon Brothers’ taxable year ends on September 30 annually. Its fiscal year 1975 commenced on October 1, 1974. It is defendant’s position that plaintiffs are taxable on their entire distributive shares of Salomon Brothers’ capital gains for the partnership’s taxable year 1975, including those gains resulting from transactions that took place during the period October 1, 1974 through December 31,1974 (the first quarter of Salomon Brothers’ taxable year).
Plaintiffs contend that their percentage shares of partnership income were fixed by the partnership agreement dated September 30,1974, and that as an item of income (or loss) was realized by the partnership, each partner’s account was credited with his allocable distributive share of the item. Consequently, plaintiffs argue, the gains realized by the partnership prior to January 1, 1975 were credited to plaintiffs prior to January 1, 1975, and thus the income was not earned, received or constructively accrued or credited to them after January 1, 1975, and is therefore not taxable.
Plaintiffs rely on N.J.A.C. 18:30-13.2, which provides:
(a) Where a partner’s taxable year differs from that of the partnership, the partner’s share of the taxable unearned income to be reported by the partner shall be based upon the income of the partnership for any taxable year of the partnership ending with or within the partner’s taxable year:
1. Example: Where a partner’s calendar year ends December 31, 1975, and the partnership’s fiscal year ends June 30, 1975, the partner reports his share of unearned income derived from the partnership for the partnership taxable year ended June 30, 1975, on his 1975 return. [Emphasis supplied]
Considering the present factual pattern, this regulation, by itself, does not appear to be ambiguous. However, plaintiffs assert that the regulation must be read in conjunction with N.J.S.A. 54:8B-2 which defines “taxable year” as:
*238 ... the same accounting period as the taxpayer’s taxable year for Federal income tax purposes or that portion of such year as commences after December 31, 1974. [Emphasis supplied]
Plaintiffs assert that pursuant to the statutory definition of taxable year and defendant’s regulation, they were required to report only their shares of Salomon Brothers’ capital gains for the partnership’s short taxable year beginning January 1, 1975 and ending September 30, 1975, the normal close of Salomon Brothers’ fiscal year.
Defendant responds that Salomon Brothers is not a taxpayer under the act, noting that “taxpayer” is defined as an individual resident or nonresident who has received unearned income. N.J.S.A. 54:8B-2. See also N.J.S.A. 54:8B-6(b), which provides:
A partnership as such shall not be subject to the tax imposed by this act. Persons who are partners shall be liable for said tax only in their individual capacities in the same manner that individuals are liable for partnership income under the Federal Internal Revenue Code as of January 1, 1976. [Emphasis supplied]
Defendant argues that the definition of “taxable year” is inapplicable to Salomon Brothers, a nontaxpayer, and that N.J.A.C. 18:30-13.2 therefore requires that plaintiffs’ report their share of Salomon Brothers gains for the entire partnership taxable year, beginning October 1, 1974.
More importantly, defendant calls attention to the fact that plaintiffs reported the gains in controversy on their 1975 federal income tax returns. He asserts that, while the gains may have been realized by Salomon Brothers prior to January 1, 1975, there is no evidence that the income' was earned, received, or constructively accrued or credited to plaintiffs’ accounts before January 1, 1975. Defendant concludes that plaintiffs’ bare assertion that items of income were immediately credited to their accounts is insufficient to overcome the presumption of correctness of his assessment, citing Aetna Life Insurance Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952) and Rothman v. Hackensack, 1 N.J.Tax 438, 442 (Tax Ct.1980), aff’d 4 N.J.Tax 529 (App.Div.1981).
Defendant’s position is essentially that taxability turns on the receipt of income by the individual partners and that the time of *239 realization of income by the partnership, Salomon Brothers, is immaterial. Defendant regards as unpersuasive plaintiffs’ reliance on Altsuler v. Peters, 190 Neb. 113, 206 N.W.2d 570 (Sup.Ct.1973), which held that capital gain or loss realized by a partnership prior to the effective date of an income tax statute was not includable in determining the partners’ tax liability. That court stated:
Nothing, it seems, could make it clearer that the partner realizes the income or the loss when the partnership does. [206 N.W.2d at 577]
Defendant distinguishes this case on the basis that the Nebraska statute imposed the tax on income realized on or after the effective date of the act, whereas the New Jersey tax is imposed on unearned income earned, received or constructively accrued or credited to the taxpayer after January 1, 1975.
This court has, however, recognized that the statutory words “earned, received or constructively accrued or credited” are consistent with the federal income tax realization concept. See Heilman v. Taxation Div. Director, 2 N.J.Tax 240, 248 (Tax Ct.1981). Defendant’s own regulations suggest that, contrary to what is asserted here, partnership unearned income is taxable to the partners even if the partners have no right to receive or draw upon it. N.J.A.C. 18:30-13.1(b) provides in relevant part:
... A partnership is required to report and file information returns as required by the Director with respect to the unearned income of the partners, whether distributed or not. [Emphasis supplied]
Plaintiffs point out that an obvious tax avoidance technique is created if partners are permitted to defer taxation of partnership income indefinitely simply by agreeing to postpone distribution of the income to the partners.[10] The regulation itself appears to be based on the principle that the taxable event is the realization of income by the partnership and not the availability of income to the individual partners.
*240 The statute requires an examination of the manner in which individual partners are liable for partnership income under the Federal income tax laws. N.J.S.A. 54:8B-6(b). Treatment of partnership gains under the New Jersey act should be consistent with the treatment of the same gains for federal income tax purposes. Swift v. Director, 183 N.J.Super. 378, 4 N.J.Tax 115, 122-123, 443 A.2d 1132 (Tax Ct.1982).
I.R.C. § 702 has required, at all times relevant here, that partners separately take into account their distributive shares of partnership gains, and that the character of any item of gain be determined as if it were realized directly from the source of the gain. Partners are taxable on their distributive, that is, proportionate, share of current partnership income without regard to whether that income is actually distributed to them or retained by the partnership. United States v. Basye, 410 U.S. 441, 447-448, 93 S.Ct. 1080, 1084-1085, 35 L.Ed.2d 412 (1973), reh’g den. 411 U.S. 940, 93 S.Ct. 1888, 36 L.Ed.2d 402 (1973). Except for the purpose of filing informational returns, partnerships are regarded as mere conduits. Swift v. Director, supra 183 N.J.Super. 378, 4 N.J.Tax. at 123, 443 A.2d 1132, quoting United States v. Basye, supra 410 U.S. 448, 93 S.Ct. at 1085. Logically then, an item of income is earned by a partner at the same moment it is earned by the partnership. Cf. Commissioner of Internal Revenue v. Goldberger’s Estate, 213 F.2d 78, 81-82 (3 Cir.1954).
The fact that plaintiffs reported the gains on their 1975 income tax returns is not determinative in this matter. On the one hand, I.R.C. § 706(a) required plaintiffs to report on their 1975 returns partnership income for the taxable year of the partnership ending within the taxable year of the partner. The New Jersey act, on the other hand, imposed liability for the tax on the partners’ unearned income that was earned, received, constructively accrued or credited on or after January 1, 1975 and in the same manner as the partners would be liable for federal income tax purposes. Since federal tax law regards the partnership as a conduit, it should also be regarded as such for *241 purposes of the New Jersey tax. See Swift v. Taxation Div. Director, supra 183 N.J.Super. 378, 4 N.J.Tax. at 122-123, 443 A.2d 1132. Accordingly, plaintiffs earned the gains at the time they were realized, without regard to whether they were distributed or available to plaintiffs at that time.
N.J.A.C. 18:30-13.2 confirms this conclusion. It is not indicated in either the statute or the regulations whether a different meaning should be attached to the term “taxable year” in the case of a partnership. Fairly read in conjunction with the effective date of the act, N.J.A.C. 18:30-13.2 requires a partner to report only his share of unearned partnership income for the short partnership taxable year, beginning January 1, 1975 and ending September 30, 1975.
The parties are directed to submit a computation of the refund due plaintiff pursuant to this opinion. R. 8:9-3. Upon receipt of such calculation this court will direct the entry of judgment.

 The act was repealed effective July 1, 1976 by L.1976, c. 47, as part of the legislation establishing the New Jersey Gross Income Tax Act. See N.J.S.A. 54A:9-24.

I.R.C. § 1236 presently requires securities dealers to identify such securities before the close of the day on which they are acquired.

In addition to distributive shares of capital gains, plaintiffs were allocated distributive shares of net ordinary income.

Plaintiffs had alleged that capital gains attributable to the sales of obligations of the Federal National Mortgage Association (FNMA) and the Government National Mortgage Association (GNMA) were not taxable under the act, but have since conceded this issue. In his brief, defendant subtracted the capital gains associated with these obligations from the total amount of the capital gains in issue, stating figures for “remaining capital gains at issue.” It appears, however, that the total disputed capital gains, and the resulting tax, remain as originally stipulated, since the FNMA and GNMA capital gains were only a subclass of the total distributive shares of capital gains upon which plaintiffs contest the tax.

Defendant correctly notes that the securities which generated the income in issue had been identified as held for investment, and were not held for sale to customers. The securities were not, therefore, stock in trade.

Plaintiffs sought discovery of documents and other information relating to the promulgation of regulations adopted by defendant to implement the act. Because defendant’s claims of privilege were upheld by this court, plaintiffs urge that the claims of privilege should be construed against defendant. See Mahne v. Mahne, 66 N.J. 53, 60, 328 A.2d 225 (1974).

 A “dealer” is in the business of selling securities to customers, while a “trader” buys and sells in the market for his own account. See Bradford v. United States, 195 Ct.Cl. 500, 444 F.2d 1133, 1140-1141 (1971) (quoting George R. Kemon, 16 T.C. 1026, 1032-1033 (1951)).

Plaintiffs suggest, in their response to defendant’s reply brief, that the interest and dividends from the securities which ultimately generated the gains in issue here are exempt from the tax by virtue of N.J.A.C. 18:30-3.5. The court has not been informed of defendant’s treatment of such dividend and interest income. The regulation exempts “interest and dividends of a person who is regularly engaged as a dealer, in purchasing stock or debt obligations with a view to the gains and profits which may be derived *236 therefrom____” Ibid. Since Salomon Brothers was not engaged as a dealer in selling these particular securities to customers, but was holding them for investment, the regulations would not seem to apply to any dividends and interest received, and such income would therefore be taxable.

Plaintiffs state that investment proceeds of a pension trust corpus typically make up a greater proportion of lump sum retirement distributions than do original employer compensatory contributions. Plaintiffs note this “in passing,” but there is nothing before the court that would indicate the accuracy of this observation.

 Defendant states that, “as a practical matter,” there will be no opportunity for tax avoidance, since the tax in issue was repealed effective July 1, 1976. N.J.S.A. 54A:9-24.